# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF INDIANA
# FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:10-CR-67-TLS |
| | ) | |
| RICKY L. WINSTON | ) | |

## SENTENCING OPINION

This matter is before the Court on a Sentencing Memorandum [ECF No. 44] filed on February 4, 2013, by the Defendant, Ricky L. Winston. For the reasons discussed, the Court will grant in part the Defendant's request and will sentence the Defendant to 33 months of confinement on his conviction.

## BACKGROUND

On August 25, 2010, the Government entered a single-count Indictment [ECF No. 1] against the Defendant, charging him with being a felon in possession of a firearm on or about May 19, 2010, in violation of 18 U.S.C. § 922(g)(1). A United States Marshal arrested the Defendant on September 30, 2011. The Magistrate Judge arraigned the Defendant on October 6, and ordered the Defendant released under certain terms and conditions. The Defendant has been on pretrial release since October 6, 2011.

On April 23, 2012, the Government submitted a Plea Agreement [ECF No. 23] signed by the Defendant, in which he agreed to plead guilty to the single-count Indictment in exchange for the Government's recommendation that the Court impose a sentence equal to the minimum of the applicable Guideline range. At a May 2, 2012, Change of Plea Hearing, the Defendant entered a plea of guilty to the single-count Indictment, and this Court adjudged him guilty on

May 17. The United States Probation Officer submitted a draft Presentence Investigation Report (PSR) [ECF No. 30] on August 20, and the Defendant entered an Objection [ECF No. 33] to the draft PSR on September 6.

The PSR indicates that on May 18, 2010, a Fort Wayne Police Department officer received an anonymous tip that a male by the name of Ricky was growing marijuana on the back porch of his house in Fort Wayne. The officer went to the address and, from an alley 20 feet away, was able to identify two pots containing approximately 20 live marijuana plants on the back porch of the residence. Officers therefore knocked on the door, and when the Defendant opened the door, the lead officer could smell a strong odor of marijuana coming from inside the apartment. The Defendant consented to the officers conducting a protective sweep of the apartment. In plain view, officers observed the burned ends of marijuana cigarettes. They opened a closet door to confirm that no one was hiding in the closet and found it lined with aluminum foil, with a dangling florescent light, plant stands, and active mold growth. The Defendant refused to consent to a complete search of the premises, so officers obtained a search warrant. Upon execution of the warrant, officers found a .45 caliber handgun on a shelf in a bedroom closet. The gun was unloaded, but next to it was a magazine loaded with three rounds of ammunition. On the same shelf in the closet was a box containing a digital scale and several baggies of marijuana. The officers also found 20 growing marijuana plants on the Defendant's back porch. The Defendant stated that he did not know why he had left the plants in plain view on the back porch, and asked the officers if they had smelled marijuana from the alley. Moreover, the Defendant stated that he had never attempted to harvest or use the marijuana he was growing. He also stated that he bought the firearm for protection.

In his Objection to the PSR, the Defendant requested clarification concerning references to other criminal investigations in paragraph 11 of the PSR. The Defendant also objected to the imposition of a 4-level increase for possession of a firearm in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B). Finally, the Defendant noted that he would be filing a sentencing memorandum to address his history of mental illness and the factors listed at 18 U.S.C. § 3553(a).

On October 15, 2012, the Court conducted an evidentiary hearing in this matter. The parties called only one witness, Larry Hoyle, the Defendant's case manager at Park Center mental health services, who testified about his relationship with the Defendant and about the Defendant's mental health history. Hoyle testified that he has been employed by Park Center for almost 20 years, and has been a recovery specialist for four or five years. He is trained to recognize mental health and mental illness. He has been meeting with the Defendant in regular appointments since December 2011, for a total of approximately 50 sessions. He testified that, according to the Defendant's mental health records, the Defendant has been diagnosed with two Axis I diagnoses—paranoid schizophrenia and post-traumatic stress disorder.[1] Hoyle testified that in the Defendant's case, his paranoid schizophrenia manifests itself in disorganized thinking and delusional thinking. Specifically, after the murder of his son in Illinois in January 2010, the Defendant began to fear that his son's killers would come for him, although there was no reason to believe that his son's killers even knew who the Defendant was or where he lived. This fear led the Defendant to a period of unrestful sleep, during which he would wake up several times

---

[1] Hoyle also testified that the Defendant has Axis II diagnoses of antisocial personality disorder and borderline intellectual functioning, but that, based on his interactions with the Defendant, Hoyle does not agree with these diagnoses.

during the night to look out the windows and to check that his doors were locked. Hoyle testified that the Defendant experienced a breakthrough in his treatment in March 2012 when he received word that his son's killers had been incarcerated and charged with murder. After March 2012, the Defendant's sleep pattern had normalized. Finally, Hoyle testified that the Defendant knew it was wrong for him to possess a firearm, but, because he feared for his life, the Defendant chose to purchase the firearm in order to protect himself from the people who murdered his son.

After reviewing the transcript from the October 15 hearing, the Defendant filed a Sentencing Memorandum [ECF No. 44] on February 4, 2013. In his Sentencing Memorandum, the Defendant requests that the Court not apply the 4-level enhancement for possession of a firearm in connection with another felony offense because the Government did not introduce lab tests proving that the plants recovered from his residence were actually marijuana, and because the record does not show that the Defendant cultivated marijuana for his own use or to sell. The Defendant also requests that the Court, pursuant to 18 U.S.C. § 3553(a), consider his paranoid schizophrenia and the extent to which it caused him to purchase the firearm in order to protect himself from his son's killers. Because such a purchase is not the sort of possession intended to be prevented by § 922(g)(1), he argues, and because of a diminished mental capacity under U.S.S.G. § 5K2.13, the Defendant requests that the Court sentence him to 24 months instead of the Guidelines recommended sentencing range of 51–63 months.

The Government filed a Response [ECF No. 45] on March 19, arguing for imposition of the 4-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) because the Defendant possessed the firearm in connection with the felony of manufacturing marijuana. The Government points out that the definition of "manufacture" in 21 U.S.C. § 802(15) has nothing to do with the purpose

4

for which a drug is manufactured. Further, the Government notes that it "need only prove the type and amount of drugs by a preponderance of the evidence" on sentencing. *United States v. Turner*, 203 F.3d 1010, 1015 (7th Cir. 2000). Because the lead Fort Wayne Police Department officer on the case had extensive experience in recognizing marijuana and had participated in approximately 1000 marijuana investigations, the Government argues that it has proven by a preponderance of the evidence that the plants recovered were marijuana. Finally, the Government concedes that the Defendant's significant history of mental illness, considered under § 3553(a), justifies a sentence within the 33–41 month range, even though the advisory Guidelines recommend 51–63 months of imprisonment.

This matter is now ripe for the Court's ruling.

## ANALYSIS

When sentencing a defendant, the district court "must first calculate the Guidelines range, and then consider what sentence is appropriate for the individual defendant in light of the statutory sentencing factors, 18 U.S.C. § 3553(a)." *Nelson v. United States*, 555 U.S. 350, 351 (2009); *see also United States v. Panice*, 598 F.3d 426, 441 (7th Cir. 2010) (citing *Nelson*, and setting forth the two-step process that a sentencing court must engage in to determine a defendant's sentence); *United States v. Bush*, 523 F.3d 727, 729 (7th Cir. 2008) ("[T]o ascertain the actual sentence, [the district court] must apply the criteria set forth in § 3553(a) to the facts and circumstances of the defendant's particular case."). In imposing a sentence, § 3553(a) requires a court to consider:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2) the need for the sentence imposed—
     (A) to reflect the seriousness of the offense, to promote respect for
     the law, and to provide just punishment for the offense;
     (B) to afford adequate deterrence to criminal conduct;
     (C) to protect the public from further crimes of the defendant; and
     (D) to provide the defendant with needed educational or vocational
     training, medical care, or other correctional treatment in the most
     effective manner;
   (3) the kinds of sentences available;
   (4) [the advisory Guidelines range;]
   (5) any pertinent policy statement [issued by the Sentencing Commission;]
   (6) the need to avoid unwarranted sentence disparities among defendants with
   similar records who have been found guilty of similar conduct; and
   (7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

   After considering these factors, a court must impose a sentence that is sufficient, but not greater than necessary, to satisfy the purposes of sentencing: adequately capturing the seriousness of the offense, providing just punishment, promoting respect for the law, affording adequate deterrence, protecting the public, and rehabilitating the defendant. *Id.* In making this determination, a district court may not presume that the Guidelines sentence is the correct one. *Nelson*, 555 U.S. at 352; *Rita v. United States*, 551 U.S. 338, 351 (2007). Ultimately, a district court must make an independent determination, taking into account the types of sentences available, the other relevant § 3553(a) factors, and the arguments of the parties. *See Gall v. United States*, 552 U.S. 38, 49–50 (2007). A sentencing court must explain any variance from the Guidelines range with reference to the § 3553(a) factors. *Nelson*, 555 U.S. at 351. "[A] major departure should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50.

**A.**  **The Advisory Guideline Range**

   The Government has not objected to the Probation Officer's calculation of the advisory

Guidelines range. The Defendant objects to the 4-level enhancement under §2K2.1(b)(6)(B). For the reasons discussed below, the Court agrees with the Government that the Probation Officer correctly applied the 4-level enhancement.

The Defendant has pled guilty to the single-count Indictment, charging him with possessing a firearm while having previously been convicted of a felony. Under U.S.S.G. § 2K2.1(a)(4)(A), the base offense level is 20 because the Defendant's previous felony conviction was for a crime of violence. Guidelines § 2K2.1(b)(6)(B) provides for a four-level increase if a defendant "possessed any firearm or ammunition in connection with another felony offense." Application Note 14 clarifies that the subsection (b)(6)(B) enhancement applies "in the case of a drug trafficking offense in which a firearm is found in close proximity to drugs, drug-manufacturing materials, or drug paraphernalia" because "the presence of the firearm has the potential of facilitating another felony offense." The Defendant argues that the record lacks a factual basis upon which to conclude that he manufactured marijuana. Specifically, he argues that the Government has failed to introduce chemical tests to prove that the plants recovered were actually marijuana. He also insists that he did not cultivate the marijuana for his own use or for sale and therefore he did not manufacture it. It is undisputed that the small amount of marijuana recovered from inside the Defendant's residence (as opposed to the plants recovered from the back porch) would not amount to felony possession under Indiana law. The Government argues that it has proven by a preponderance of the evidence that the plants were marijuana plants, and that the Defendant manufactured them as defined in the statute. All parties agree that the Defendant is entitled to a 3-level reduction for acceptance of responsibility, and that he is in criminal history category II.

The Court finds that the Government has met its burden to prove by a preponderance of

the evidence that the plants recovered from the Defendant's residence were marijuana plants. *Turner*, 203 F.3d at 1015. The investigation began with an anonymous tip that the Defendant was growing marijuana plants. The lead Fort Wayne Police Department officer, who had extensive experience in detecting and investigating marijuana, observed the two pots on the Defendant's back porch from 20 feet away and determined, based on his training and experience, that they contained marijuana plants. Further, the record indicates that the Defendant himself admitted that the plants were marijuana plants, but stated that he had never tried to harvest or use them. Based on the officer's determination and the Defendant's admission, the Court finds that the Government has shown by a preponderance of the evidence that the plants in question were marijuana plants.

Moreover, the Court finds that the Defendant manufactured the marijuana plants within the meaning of the statute. "Manufacture" is defined as "the production, preparation, propagation, compounding, or processing of a drug or other substance, either directly or indirectly or by extraction from substances of natural origin." 21 U.S.C. § 802(15). "The term 'manufacturer' means a person who manufactures a drug or other substance." *Id.* As the Government notes, the statutory definition of manufacture has nothing to do with the purpose for which the drug is manufactured.[2] Therefore, although the Defendant urges that he did not harvest the marijuana he was growing for use or for sale, it appears that, even if his statements were to be taken at face value, he still manufactured the marijuana within the meaning of the statute.

Finally, although the parties have not applied the language of Application Note 14, the Court finds that the firearm was found "in close proximity to drugs, drug-manufacturing

---

[2]The statute does exclude from the definition of manufacture "the preparation, compounding, packaging, or labeling of a drug or other substance in conformity with applicable State or local law by a practitioner as an incident to his administration or dispensing of such drug or substance in the course of his professional practice." *Id.*

8

materials, or drug paraphernalia." Officers found the firearm in the same closet and on the same shelf as a small amount of marijuana and a digital scale, and in the same residence and on the same floor as the 20 marijuana plants. *See United States v. Meece*, 580 F.3d 616, 621 (7th Cir. 2009) (finding that firearms were found in close proximity for purposes of § 2K2.1 Application Note 14 where "the guns were found upstairs while the scale and baggies were found on the main floor and the cash was recovered from the basement"). Therefore, the Court finds that the Defendant possessed the firearm in connection with the felony offense of manufacturing marijuana, and the 4-level enhancement under § 2K2.1(b)(6)(B) is appropriate.

Accordingly, the Defendant's total offense level under the Guidelines is 23. Given his criminal history category of II, his Guidelines recommended sentencing range is from 51–63 months of imprisonment.

**B.     The § 3553(a) Factors**

The Defendant argues that, in spite of the applicable Guidelines range, the Court should exercise its discretion under § 3553(a) and sentence him outside the Guidelines to 24 months of confinement. The Government does not object to the Defendant's request for a sentence beneath the Guidelines recommended range, but suggests that a sentence from 33–41 months would be appropriate. For the reasons discussed below, the Court finds that the specific circumstances of the Defendant's case warrant a sentence of 33 months.

At the October 15 hearing, Hoyle testified about the Defendant's long history of mental illness, and about his difficult life circumstances. The PSR indicates that the Defendant's father abused him as a child in Hammond, Indiana. Hoyle testified that the Defendant was diagnosed with paranoid schizophrenia and post-traumatic stress disorder after his son was murdered in

9

January 2010. From November 2010 to the present, the Defendant has met regularly with Hoyle to address his disorganized and delusional thinking. Hoyle testified about the Defendant's paranoid fear that his son's killers would find him, and his disruptive sleep patterns. He also testified about the breakthrough in the Defendant's treatment when he learned that his son's killers had been incarcerated. The Defendant expressed to Hoyle that he knew it was illegal for him to possess a gun, but he purchased the gun anyway because he feared for his life.

One important factor a sentencing court must consider is "[t]he defendant's motive for committing the offense." *Wisconsin v. Mitchell*, 508 U.S. 476, 485 (1993). "[I]f there is a nonfrivolous dispute about a defendant's mental capacity, a sentencing court should address the issue, making a finding on whether the defendant suffers from diminished capacity and whether that diminished capacity contributed substantially to the commission of the crime." *United States v. Portman*, 599 F.3d 633, 637 (7th Cir. 2010). Further, the United States Sentencing Commission has provided policy statements that are relevant to the Defendant's situation:[3]

> A downward departure may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense. Similarly, if a departure is warranted under this policy statement, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

U.S.S.G. § 5K2.13 Diminished Capacity (Policy Statement). Additionally, the Sentencing Commission states:

> Mental and emotional conditions may be relevant in determining whether a departure is warranted, if such conditions, individually or in combination with other offender characteristics, are present to an unusual degree and distinguish the case from the

---

[3]Although "[t]he concept of departures has been rendered obsolete in post-*Booker* sentencing . . . the district court may apply those departure guidelines by way of analogy in analyzing the section 3553(a) factors." *United States v. Miranda*, 505 F.3d 785, 792 (7th Cir. 2007). *See United States v. Ortega-Galvan*, 682 F.3d 558, 564 (7th Cir. 2012) (stating that a district court may analyze the significance of a defendant's mental health issues as part of its § 3553(a) analysis, using § 5K2.13 "by way of analogy").

> typical cases covered by the guidelines.

U.S.S.G. § 5H1.3 Mental and Emotional Conditions (Policy Statement). Finally:

> [A] defendant may commit a crime in order to avoid a perceived greater harm. In such instances, a reduced sentence may be appropriate . . . [C]onduct may not cause or threaten the harm or evil sought to be prevented by the law proscribing the offense at issue.

U.S.S.G. § 5K2.11 Lesser Harms (Policy Statement).

The Court must consider the history and characteristics of the Defendant. It appears the Defendant's motive in purchasing the firearm was significantly affected by his irrational fear that his son's killers would seek him out and take his life. *See United States v. Frappier*, 377 F. Supp. 2d 220, 225 (D. Me. 2005) (sentencing a felon in possession of a firearm beneath the Guidelines recommended range because the defendant's "sole motivation in possessing the firearms" was a legal motive). Such a motive, fueled by his mental illness, could have significantly reduced the Defendant's mental capacity and substantially contributed to his decision to purchase the firearm. That would justify a concomitant variance from the Guidelines under the reasoning of § 5K2.13. *See Portman*, 599 F.3d at 636–37 (discussing diminished capacity).

Further, it appears that, under § 5H1.3, the Defendant has mental and emotional conditions that are present "to an unusual degree" and that the Defendant's mental and emotional conditions distinguish his case from the typical cases covered by the Guidelines. The Defendant's history of mental illness is well-documented. The PSR indicates that he was first diagnosed with schizophrenia fifteen years ago. The PSR also indicates that the Defendant's mental history includes "auditory hallucinations, delusional beliefs, paranoia, . . . anxiety[,] . . . [and] physical altercations, thinking people were out to get him." (PSR ¶ 60, ECF No. 34.) The murder of his son and his subsequent paranoid fear that he would also be murdered distinguish the Defendant's situation from a typical case of a felon in possession of a firearm. Further, the

Defendant's "overall cognitive abilities fall in the lower extreme range." (PSR ¶ 62.) For all of these reasons, the Court finds that the history and characteristics of the Defendant contributed, in part, to his commission of the offense, and justify a sentence beneath the Guidelines recommended range. [4]

In light of all the evidence presented at the October 15 hearing, in the PSR, and in the Defendant's Sentencing Memorandum, the Court finds that the nature and circumstances of the offense conduct and the Defendant's history and characteristics, in light of all the purposes of punishment and in light of the advisory Guidelines range, justify a variance from the advisory Guidelines range for this Defendant. Specifically, the Court finds that a sentence of 33 months of imprisonment is sufficient, but not greater than necessary, to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the Defendant, and to provide the Defendant with needed rehabilitative opportunities. The Court finds that such a sentence will not promote disparities among defendants with similar records, particularly given the Defendant's unique personal circumstances, and finds that restitution is not at issue. The Court notes that the Government agrees that a sentence of 33 months is sufficient, but not greater than necessary, to comply with the purposes of punishment in 18 U.S.C. § 3553(a). The Defendant has demonstrated that his mental and emotional conditions, present to an unusual degree, distinguish his case from a typical felon in possession case and justify a sentence outside the advisory Guidelines recommended range. The Court therefore finds that his

---

[4]The Court disagrees, however, with the Defendant's argument that his decision to purchase a firearm because he feared for his life is not the type of harm or evil sought to be prevented by the law prohibiting felons from possessing firearms. *See United States v. Jackson*, 598 F.3d 340, 352 (7th Cir. 2010) ("[P]ossessing a firearm even 'for a brief period of time is sufficient to constitute possession within the meaning of section 922.'") (quoting *United States v. Matthews*, 520 F.3d 806, 811 (7th Cir. 2008)).

request for a variance is warranted by the record.

**CONCLUSION**

For all the reasons discussed above, the Court GRANTS IN PART and DENIES IN PART the request contained in the Defendant's Sentencing Memorandum [ECF No. 44]. Finding that, based on the record presented, a sentence of 33 months imprisonment is appropriate under 18 U.S.C. § 3553(a), the Court GRANTS the Defendant's request for a sentence below the Guidelines recommended range, but DENIES his request for a sentence of 24 months of confinement. Accordingly, the Court anticipates sentencing the Defendant in accordance with this Sentencing Opinion. The Court CONFIRMS the telephonic status conference in this matter, set for April 25, 2013, at 10:00 AM. The Court will initiate the call.

ENTERED: April 22, 2013.

                                                  s/ Theresa L. Springmann
                                                  THERESA L. SPRINGMANN
                                                  UNITED STATES DISTRICT COURT